City of Scranton, Department of Fire, Petitioner
v. Commonwealth of Pennsylvania, Workmen's
Compensation Appeal Board, Commonwealth of
Pennsylvania, and Olga O'Donnell, Widow of
Paul O'Donnell, Deceased, Respondents.

Olga O'Donnell, Widow of Paul O'Donnell, De-
ceased, Petitioner v. Commonwealth of Pennsyl-
vania, Workmen's Compensation Appeal Board
and City of Scranton, Department of Fire et al.,
Respondents.

Argued March 8, 1979, before Judges CRUMLISH, JR., BLATT and CRAIG, sitting as a panel of three.

*John R. Lenahan, Jr.*, with him *Lenahan, Dempsey, Murphy & Piazza*, for City of Scranton, Department of Fire.

*H. R. Van Deusen, Jr.*, with him *Van Deusen & Van Deusen*, for Olga O'Donnell.

*Sandra Christianson*, Assistant Attorney General, for Commonwealth of Pennsylvania.

OPINION BY JUDGE BLATT, May 31, 1979:

Two cases were consolidated here for argument on appeal. In No. 948 C.D. 1978, the City of Scranton (City) appealed from an order of the Workmen's Compensation Appeal Board (Board) which affirmed a referee's award of benefits to Olga O'Donnell (claimant) pursuant to The Pennsylvania Workmen's

Compensation Act,[1] (Workmen's Compensation Act). In No. 805 C.D. 1978, the claimant appealed from the same order alleging that the Board erred in calculating the amount of the award.

### No. 948 C.D. 1978

The claimant's husband (decedent) was employed as a City fireman prior to his death in 1973, and she filed a claim petition under Section 108(o) of The Pennsylvania Occupational Disease Act,[2] (Occupational Disease Act) 77 P.S. §1208(o), alleging that his death was the result of exposure to the hazards of an occupational disease contracted during his City employment. The referee held that she was entitled to benefits under the Workmen's Compensation Act, not under the Occupational Disease Act as claimed, and the Board affirmed this award.

On an earlier appeal to this Court, we held that proper jurisdiction was with the Court of Common Pleas of Lackawanna County and we transferred the appeal to that court. It concluded that the claimant had succeeded in proving her husband's death to have been caused by an occupational disease and was entitled to benefits under the Workmen's Compensation Act, but it remanded the case to the Board for a determination as to whether or not the decedent has been exposed to the hazard of this occupational disease after June 30, 1973.[3] On another appeal to this Court, we found that the referee and Board had both erred in awarding benefits under the Workmen's Compensation Act because the claim had been filed under the Occupational Disease Act. *O'Donnell v. City of Scranton*, 22 Pa. Commonwealth Ct. 411, 349 A.2d 502

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §1 et seq.

[2] Act of June 21, 1939, P.L. 566, *as amended*, 77 P.S. §1201 et seq.

[3] Pursuant to Section 301(c) of The Pennsylvania Workmen's Compensation Act, 77 P.S. §411.

(1975), and we remanded the case to the Board for a proper adjudication under the Occupational Disease Act. By order dated November 24, 1976, therefore, the Board made an award under the Occupational Disease Act and the Commonwealth commenced the payment of benefits to the claimant. On December 31, 1975, however, and, of course, prior to this November 24, 1976 order, the claimant had filed a fatal claim petition under the *Workmen's Compensation Act* alleging that her husband's death was caused by his exposure to an occupational hazard from February 6, 1950 up to and including October 8, 1973. The referee had then awarded benefits and the Board had affirmed. This appeal by the City which related to the Board's award pursuant to the petition for benefits under the Workmen's Compensation petition, followed.

The City argues first that the medical evidence of record was insufficient as a matter of law to support the claimant's allegation that a causal relationship existed between the decedent's employment as a City fireman and his death. The medical evidence presented established that the immediate cause of the decedent's death was the existence of pulmonary emboli, which were caused by diseases of the heart and lungs. The referee concluded that the death was the result of heart and pulmonary diseases caused by the decedent's exposure to the smoke, heat, fumes and gases associated with the decedent's work. The City maintains, however, that the referee erred in so concluding because the claimant's witnesses were equivocal in their testimony concerning the cause of the decedent's lung cancer and the City's expert stated positively that there was no causal relation between the illness and the decedent's work as a fireman.

It is well settled that it is the fact-finder's function to select between conflicting medical testimony. *Al-*

*lied Chemical Corp. v. Workmen's Compensation Appeal Board,* 15 Pa. Commonwealth Ct. 195, 325 A.2d 482 (1974). And our scope of review is, of course, limited to a determination of whether or not the decision was made in accordance with the law, constitutional rights were violated and the findings were supported by substantial evidence. 2 Pa. C.S. §704. After a review of the record here, we cannot say that there was insufficient evidence upon which the referee could have based his conclusion that the decedent's illness was causally connected to his employment, and the Board found that the medical evidence presented to the referee, along with the applicable statutory presumption,[4] was sufficient to sustain the award.

The City also argues that the claimant was precluded from pursuing an award under the Workmen's Compensation Act because she had already accepted benefits under the Occupational Disease Act. In *City of Hazleton v. Workmen's Compensation Appeal Board,* 35 Pa. Commonwealth Ct. 477, 386 A.2d 1067 (1978), where we were faced with facts similar to those present here, we remanded the case to the Board for a proper determination under the Occupational Disease Act. The Board in *City of Hazleton, supra,* in turn remanded the case to the referee to allow the claimant to amend his claim petition from one under the Occupational Disease Act to one under the Workmen's Compensation Act, and, holding that the claimant was entitled to so amend this petition, we affirmed the Board. In the instant case, we have nearly the

---

[4] Section 301(e) of The Pennsylvania Workmen's Compensation Act, 77 P.S. §413 provides:

If it be shown that the employe, at or immediately before the date of disability, was employed in any occupation or industry in which the occupational disease is a hazard, it shall be presumed that the employe's occupational disease arose out of and in the course of his employment, but this presumption shall not be conclusive.

same circumstances except for the fact that here, even after the claimant had filed a claim petition under the Workmen's Compensation Act, the Board continued to address the original petition under the Occupational Disease Act and awarded benefits under that Act. The claimant here, therefore, began to receive benefits under the Occupational Disease Act after she had filed her Workmen's Compensation claim but before any determination was made as to the new petition. So the City argues that, because the claimant here actually *accepted* benefits under the Occupational Disease Act, she should now be deemed to have made a final election and that our holding in *City of Hazleton, supra,* is not applicable.

We note that Section 444 of the Workmen's Compensation Act, 77 P.S. §1000, provides that a claim may be brought under either that statute or the Occupational Disease Act or under both statutes in the alternative, and that there is no statutory provision as to when or if any such election will become final. We believe that the claimant here would clearly have been able to amend her petition so as to proceed under one act even after having begun under the other, and the fact that she chose instead to file a new claim petition, within the applicable statute of limitations does not affect her right to so proceed.

The City's final argument concerns that part of the Board's order which directed the City to reimburse the Commonwealth for payments which the Commonwealth made to the claimant under the provisions of the Occupational Disease Act, it being undisputed that the claimant is entitled to receive benefits under only one act. The Commonwealth asserts that, if the City is found to be responsible under the Workmen's Compensation Act, the City will be required to make back payments and the claimant receiving those retroactive benefits will then be required to reimburse the Commonwealth for the period to which the workmen's

compensation benefits are retroactive and during which she was receiving benefits from the Commonwealth. It argues that the Board was correct, therefore, in ordering the City to pay the Commonwealth directly instead of having the City pay the claimant and the claimant pay the Commonwealth. The City, however, takes the position that the Board had no statutory or legal authority to issue such an order and that, even if the City owes compensation benefits, these are owed only to the claimant who is precluded from receiving them because she was at the time they were payable already receiving benefits from the Commonwealth.

We are unpersuaded by the City's arguments. If the City is held liable for payments under the Workmen's Compensation Act, its duty will be to make payments to the claimant from the time of her husband's death. The fact that she had been receiving benefits from another source for part of that period will not alter the City's duty but will merely require the claimant to choose between receiving one set of benefits or the other for the period concerned. The Board, knowing that, attempted to expedite a conclusion of this case by having the City make its payments directly to the Commonwealth. Because we have affirmed the Board's order making the City liable for those back payments, we perceive no prejudice to it by having it make the payments partly to the claimant and partly to the Commonwealth.

The order of the Board, therefore, is affirmed.

No. 805 C.D. 1978

By order of the Board, the claimant was awarded benefits of $76.50 per week pursuant to Section 307 of the Workmen's Compensation Act, 77 P.S. §561, which at the relevant time[5] provided in pertinent part:

---

[5] The statute was amended in 1974 to remove the 66 2/3% ceiling.

In case of death, compensation shall be computed on the following basis, and distributed to the following persons: Provided, That in no case shall the wages of the deceased be taken to be less than fifty per centum of the Statewide average weekly wage for the purposes of this section:

. . . .

2. To the widow or widower, if there be no children, fifty-one per centum of wages, but not in excess of sixty-six and two-thirds per centum of the Statewide average weekly wage.

The record shows that the decedent's actual average weekly wage was $197.00 while the statewide average weekly wage was $150.00. The Board applied the 51% figure prescribed in the statute to the *statewide average weekly wage* and determined that the claimant was entitled to $76.50. She argues, however, that the 51% figure refers to the actual weekly wages of the decedent and that she therefore is entitled to $100.00 per week, calculating by 51% of actual average weekly wage of $197.00 which is $100.47, subject to the ceiling of 66 2/3% of the statewide average weekly wage of $150.00, or $100.00.

We believe that the Board clearly erred in applying the 51% figure to the statewide average weekly wage instead of to the decedent's actual average weekly wage, and we must therefore hold that the Board's order awarding the claimant $76.50 per week must be modified so as to award her $100.00 per week.

The order is therefore affirmed as so modified.

### Order

And Now, this 31st day of May, 1979, the order of the Workmen's Compensation Appeal Board in the above-captioned matter is affirmed as modified to award the claimant benefits of $100.00 per week. Judg-

ment is therefore entered in favor of Olga O'Donnell and against the City of Scranton and/or its insurance carrier in the sum of $100.00 per week beginning October 25, 1973 and continuing indefinitely thereafter during the lifetime of the claimant, subject to the provisions and limitations of The Pennsylvania Workmen's Compensation Act. It is further ordered that the City shall reimburse the Commonwealth of Pennsylvania for compensation previously paid to the said Olga O'Donnell at the rate of $39.00 per week so that the compensation payable to the claimant will be $61.00 per week commencing October 25, 1973 and continuing up to and including the time when the Commonwealth ceases to pay compensation under the prior award, with compensation to be payable to the claimant in the amount of $100.00 per week thereafter.